NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TANAIJAH A. ROUNDTREE, NICOLAS MOLINA, and D'ANDRE KING,<br><br>        Plaintiffs,<br><br>v.<br><br>PRIMEFLIGHT AVIATION SERVICES, INC.,<br><br>        Defendant. | Civil Action No. 16-9609 (CCC)<br><br><br><br><br><br><br><br>REPORT & RECOMMENDATION |

**FALK, U.S.M.J.**

Plaintiffs bring this case as a putative class action under the New Jersey Wage and Hour Law ("NJWHL"), contending that Defendant wrongfully deducted pay for lunch breaks each day, and further failed to fully record their compensable work, including unpaid overtime. Defendant removed the case to federal court, alleging jurisdiction pursuant to The Class Action Fairness Act of 2005 ("CAFA"). Before the Court is Plaintiffs' motion to remand this case to state court. [ECF No. 7.] Plaintiff contends that the case does not meet CAFA's jurisdictional threshold of $5,000,000. For the reasons set forth below, it is respectfully recommended that Plaintiff's motion be **DENIED**.

I.      **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs are three residents of the State of New Jersey. (Compl., ¶¶ 3-5.) Defendant is an Ohio corporation with its principal place of business in Tennessee. (Compl., ¶ 6.) Defendant is in the business of providing aviation and airport business services. (*Id.*) Plaintiffs, and the putative class, worked for Defendant as cabin cleaners, lift truck drivers, drivers' helpers, and "in similar trades" at Newark Airport. (Compl., ¶¶ 1, 3-5.)[1]

Plaintiffs allege that, "at all times between October of 2014 and the present," Defendants engaged in a pattern and practice of automatically deducting one-half hour each day from each Plaintiff and member of the putative class' pay. (Compl., ¶ 15.) This deduction was allegedly related to meal breaks, although Plaintiffs claim that they routinely did not receive a lunch break and performed work during that time for which they were not compensated. (Compl., ¶¶ 15-17.) Plaintiffs further contend that Defendants engaged in a pattern and practice of automatically "clocking out" Plaintiffs and all other class members at a point "at or near their scheduled shift ending time," even though they routinely worked past the time of these automatic "clock-outs" and were not compensated. (Compl., ¶ 18.) As a result, Plaintiffs claim that they were not paid the statutorily required minimum wage, and that they were

---

[1] Plaintiff Roundtree was employed as a cabin cleaner and cabin cleaning lead from February 2016 until she resigned in October 2016. (Compl., ¶ 3.) Plaintiff Molina remains employed by PrimeFlights as a cabin cleaner. (Compl., ¶ 4.) Plaintiff King was employed as a lift truck driver from April 2015 until September 2016. (Compl., ¶ 5.)

denied overtime compensation for "breaks" automatically deducted from their paychecks, as well as for the time past their scheduled shift endings after they had been automatically "clocked out." (Compl., ¶¶ 23-24.)

On November 4, 2016, Plaintiffs filed this putative class action in the Superior Court of New Jersey, Essex County. The Complaint alleges that it is brought, "on behalf of the Plaintiffs and a putative class consisting of each and every other person who performed work in trades, including but not limited to cabin cleaners, cabin cleaning leads, lift truck drivers, drivers' helpers, and other related trades for Defendants at Newark Airport." (Compl., ¶ 8.) The Complaint contains two counts labeled (1) New Jersey Minimum Wage Compensation, N.J.S.A. §§ 34:11-56a4, *et seq.*; and (2) New Jersey Overtime Compensation, N.J.S.A. §§ 34:11-56a4, *et seq*. Plaintiffs allege that the class "is believed to be in excess of 100 similarly situated employees," (Compl., ¶ 9), and that all class members are entitled to "(a) Damages; (b) attorney's fees; and (c) costs of suit." (Compl., *ad damnum* clause).

On December 30, 2016, Defendant removed the action pursuant to 28 U.S.C. §§ 1332(d)(2), (d)(5)(B) and 1446. This removal invoked CAFA jurisdiction, which vests original jurisdiction in federal district courts over "class actions" in which the proposed class has at least 100 members, "the parties are minimally diverse," and "the matter in controversy exceeds the sum or value of $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558, 559 (2013).

On January 20, 2017, Defendant filed a motion to compel arbitration and dismiss the Complaint. The motion remains pending.

## II. **PLAINTIFFS' MOTION TO REMAND**

On January 30, 2017, Plaintiff filed the present motion to remand. Plaintiff concedes that the first two CAFA requirements are satisfied—i.e., there are at least 100 proposed class members and the parties are minimally diverse. However, Plaintiff's complaint is silent on the amount of damages sought. And Plaintiff initially argued that, in removing the case, Defendant failed to show, "to a legal certainty," that the requisite amount in controversy—$5 million—is in dispute. (Pl.'s Br. 3 (citing *Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006)).

Defendant opposed the motion to remand, cogently tracing a series of recent cases to explain that, while it indeed does bear the burden on a motion to remand, that burden is to show only "by a preponderance of the evidence" that the required amount in controversy is in dispute. (Def.'s Br. 5-7 (citing *Standard Fire Ins.*, 568 U.S. 558; *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495 (3d Cir. 2014); and *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014)).)[2]

After full briefing, the parties now agree that (1) the burden is on Defendant; and (2) that the burden is a "preponderance of the evidence." (*See, e.g.*, Pl.'s Reply

---

2 District Judge Kugler reconciled all of these cases in *Grace v. T.G.I. Fridays, Inc.*, 2015 WL 4523639 (D.N.J. July 27, 2015). There is no need to repeat Judge Kugler's analysis here, especially when the parties ultimately agree on the standard that applies.

4

Br. 1.) However, they continue to disagree whether Defendant has shown $5 million is in dispute.

## III. <u>LEGAL STANDARD</u>

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

Following *Standard Fire*, *Judon*, and *Owens*, it is clear that, when a complaint is silent on the amount of damages sought, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Owens*, 135 S. Ct. at 553. If contested, the "the parties must submit proofs for the court to decide—by a preponderance of the evidence—whether the jurisdictional requirements are met." *Hoffman v. Teleflora*, 2016 WL 423648, at *3 (D.N.J. Jan. 19, 2016); *see also Grace*, 2015 WL 4523639, at *5.

A preponderance of the evidence means "proof to a reasonable probability that jurisdiction exists." *Allen v. Bloomingdale's Inc.*, 2016 WL 4579975, at *2 (D.N.J. July 19, 2016) (citing *Federico*, 507 F.3d at 196 n.6). The Court may look to the

5

notice of removal and the submissions on the motion to remand to determine whether the amount in controversy has been established.  *See* 28 U.S.C. § 1446(c)(2)(A); *see also Pollock v. Trustmark, Inc.*, 367 F. Supp. 2d 293, 297 (E.D.N.Y. 2005) ("Where there is no dollar amount alleged in the complaint and the action is in federal court by a notice of removal, a reasonable probability that the jurisdictional amount is met can be established by competent evidence from other sources.  The [c]ourt first looks to the complaint, then to the moving papers, then to anything else.") (cites and quotes omitted)).  The amount in controversy is measured "not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (quoting *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)); *see also Hatchigan v. State Farm Ins. Co.*, No. 13-2880, 2013 WL 3479436, at *2 (E.D. Pa. July 13, 2013).

## IV. <u>APPLICATION OF THE PREPONDERANCE STANDARD</u>

Under CAFA, the claims of all plaintiffs and putative class members are aggregated to determine if the amount in controversy exceeds the jurisdictional threshold.  *See* 28 U.S.C. § 1332(d)(6).  To attempt to compute the amount in controversy, Defendant has addressed the following variables: (1) the size of the putative class; (2) the amount of overtime worked by the purported class members; (2) the applicable pay rate; (4) the liability period; and (5) attorney's fees.  In order to address the factors, Defendant relies in part on the Declaration of Christina Michelle Hall, Payroll Director for PrimeFlight Aviation Services.  Applying the Hall

6

Declaration to the allegations in the Complaint, Defendant calculates the amount in controversy to be at least $6,594,295. This calculation is made by using the following information: (1) *Class Members*: 481 class members for the period of October 1, 2014 to October 1, 2015; 444 class members for the period from October 1, 2015 to October 1, 2016; and 538 class members for the period from October 1, 2016 to October 1, 2018; (2) *Time Worked*: 2.5 hours per class member per week, defined as a 30 minute lunch break for each class member for a 5 day work week; (3) *Pay Rate*: $13.00 an hour, which is the mid-point between the lowest and highest pay rates of the putative class members; and (4) *Liability Period*: 4 years, including two years prior to the filing of the Complaint and two years after.

    Plaintiffs counter with an amount in controversy calculation that they claim is "more accurate and true to the Plaintiffs' allegation in the Complaint." Plaintiffs concede that the number of Class Members Defendants have used in their calculation is accurate. However, they claim that Defendant has overestimated the applicable pay rate and used too long of a liability period, which they contend should be two and one-half years, not the four Defendant proposes. Using the pay rate for the named class members and the dates that they worked for Defendant, Plaintiffs project that no more than $1.6 million is in dispute. Contending that attorney's fees would not raise the amount in dispute to $5 million, they argue remand is necessary.

After carefully reviewing the parties' differing calculations, the Court is satisfied that Defendant's composition of the amount in controversy is reasonable and not a "pie-in-the-sky" contrived number invented to meet the jurisdictional threshold. As is shown below, Defendant has met its burden to show that more than $5 million is in dispute.

A.  **Class Members**

Plaintiffs' class is defined extremely broadly as "Plaintiffs and a putative class consisting of each and every other person who performed work in trades, including but not limited to cabin cleaners, cabin cleaning leads, lift truck drivers, drivers' helpers, and other related trades for Defendants at Newark Airport." (Compl., ¶ 8.) And Plaintiffs plead that, on information and belief, the number of class members exceeds 100. (Compl., ¶ 9.) Defendant submits the Hall Declaration, which states that based on the class definition—including cabin cleaners, cabin cleaning leads, lift truck drivers, driver helpers, dispatchers, and other non-exempt trade personnel—that it employed 481 potential class members as of October 1, 2014; 444 potential class members as of October 1, 2015; and 538 class members as of October 1, 2016. (Hall Decl., ¶ 3.) Defendant has used the number of potential class members in its amount in controversy calculation, and Plaintiffs have not challenged them. (Pl.'s Reply Br. 5-6.) Accordingly, the Court accepts the number of class members as stated in the Hall Declaration.

B. **Amount of Overtime Worked**

Defendant's Notice of Removal supposes that plaintiff and the members of the class worked 2.5 hours per-week of unpaid overtime. This assumption is based on the allegations in the Complaint that include: that plaintiffs and the members of the class "*regularly worked over forty hours per week and were not properly paid time and one half their regular hourly rate for each such hour*"; (Compl., ¶ 24 (emphasis added)); that Defendant engaged in a pattern and practice of automatically deducting 30 minute lunch breaks from employee pay each day and that they "*regularly and routinely* failed to receive a lunch break, and performed work during break time for which they were not compensated" (Compl., ¶ 17 (emphasis added)); and that Defendant engaged in a pattern and practice of automatically "clocking-out" employees, and that Plaintiffs and the members of the putative class "*regularly and routinely* performed work past the time of these automatic 'clock-outs,' for which they were not compensated." (Compl., ¶¶ 18-19 (emphasis added).)

Taking these broad allegations of regular and routine unpaid work and unpaid overtime, Defendants estimate 2.5 hours of unpaid overtime per class member each week. The 2.5 hour number is reached by taking the alleged unpaid 30 minute lunch break each day for each class member and assuming a five day work week. Plaintiffs take issue with the amount of overtime hours used in Defendants' amount in controversy calculation, contending it is speculative. But what else is a Defendant to do? The Court is well-aware that the Third Circuit has disapproved of the use of

"inconclusive assumptions" in calculating the amount in controversy. *See, e.g.*, *Morgan,* 471 F.3d at 475. However, I have previously discussed how, in this type of overtime case, what Defendant has done here is entirely reasonable if not all that it can do:

> This number [of overtime hours] is necessarily speculative. [A]n allowance must be made for this aspect of an overtime claim. This is because the number of overtime hours worked is presumably not known by defendant.
>
> . . . [I]n this type of overtime case, the number of overtime hours allegedly worked can only be estimated. Court have held that "when determining whether a plaintiff has established a prima facie case under the NJWHL . . . a plaintiff need not prove damages with precision when it is impracticable or impossible to do so. *Genarie v. PRD Mgmt., Inc.,* No. 04-2082, 2006 WL 436733, at *18 (D.N.J. Feb. 17, 2006). Damages only need to be proved with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate of damages. Because certain cases may involve claims incapable of precise definition, 'when the total amount of actual damages cannot be verified, speculative evidence may be used to estimate [the amount in controversy]." *Horn* [*& Hardart Sys., LLC v. Hunter*], 2005 WL 1522266, at *2 [D.N.J. June 27, 2005].
>
> Plaintiff's amended complaint places no limit on the amount of overtime pay sought, and alleged that the class members "regularly" worked overtime hours. The Court concludes that three (3) hours per week is a reasonable reading of the rights being litigated. *See Angus*, 989 F.2d at 146.

*Faltaous v. Johnson & Johnson*, 2007 WL 3256833 (D.N.J. Nov. 5, 2007).

This case is the same as *Faltaous*. Plaintiffs allege that unpaid hours and overtime hours were "regularly and routinely worked." They do not place a limit on the number of overtime hours worked or overtime pay sought. A defendant facing this type of claim has no choice but to attempt to fairly project the number of hours of allegedly uncompensated time or uncompensated overtime. Placing a more demanding burden on a removing defendant would essentially preclude it from establishing the amount in controversy, but at the same time leave them exposed to unlimited damages. This can't be. Stripped of legalese, the concept of assessing the amount in controversy is to look at the claims made in the Complaint and the proofs that the parties can reasonably provide and determine what the value of the rights being litigated. *See Angus*, 989 F.2d at 146. Defendant has done precisely that.

It may be that some class members do not have 2.5 hours of uncompensated overtime per week; however, it is equally likely that some have more, perhaps even substantially more. Faced with an open-ended claim referring to "regular and routine" overtime without compensation, the Court is satisfied that Defendant has established, by a preponderance, that 2.5 hours of unpaid overtime is reasonable for each class member per-week. This is especially so when the 2.5 hours is tethered to the allegations in the Complaint of 5 day-a-week, 30-minute uncompensated lunch breaks. Indeed, if anything, it is likely conservative and the true amount much higher.

## C. The Rate of Pay

Plaintiff Roundtree's hourly wage as a cabin cleaner and cabin cleaner lead was $11. Plaintiff King's hourly wage as a lift truck driver was $16. Plaintiff Molina's current wage as a cabin cleaner is $10.10 per hour. (Notice of Removal, ¶ 16 (citing Hall Decl., ¶ 7.) The wage rates for other non-exempt trade positions at Newark Airport generally range between $10.10 and $16.00 per hour. In light of the breadth of the class and the different positions encompassed within it, Defendant has utilized a wage amount of $13.00 per-hour. The $13 per-hour rate is the midpoint of the named plaintiff's hourly wages, as well as the mid-point between the highest and lowest pay rates of occupations in the putative class.

Plaintiffs concede that the $13.00 per hour number is "not unreasonable," but nevertheless propose a different methodology that purports to calculate each individual Plaintiff's claim and then multiply the individual Plaintiffs' damages by the total amount of class members. However, the Court concludes that $13.00 is a reasonable number to apply to the class members on an across-the-board basis. Plaintiffs' proposed class definition includes many positions at different pay rates. The class is not limited by duration of employment, seniority, or by pay in any way. There may be times when the average pay rate would be slightly less than $13.00 for the entire class, but there will also be times when it is likely more. In other words, neither Plaintiffs nor Defendants proposal is likely to be exact. But, under a preponderance of the evidence standard, the Court cannot say that Defendant's

proposal of a mid-point salary is unreasonable, if not most likely to lead to a close approximation of the class' alleged damages.

D.  **Liability Period**

Plaintiff's complaint alleges Defendant's NWHL pay deficiencies have been ongoing "at all times between October of 2014 and the present." (Compl., ¶ 15.) Defendant's notice of removal and briefing utilizes a four-year liability period in calculating the amount in controversy. This four-year period is comprised of two years prior to suit measured by the statute of limitations on the NJWHL claim, and two years after the date the Complaint was filed, citing case law that supports the inclusion of two additional years for liability period purposes in NJWHL cases, *see e.g.*, *Faltaous*, 2007 WL 3256833, at *9 (Report and Recommendation, Falk, M.J., adopted in full by Linares, C.J.); and *Alegre v. Atl. Ctrl. Logistics*, 2015 WL 4607196, at *3-4 (D.N.J. July 25, 2015) (Chesler J., citing *Faltaous*, *supra*).

Plaintiffs counter that only 2½ years should be used, measured by the two year statute of limitations and then an arbitrary additional six months after the Complaint was filed. Plaintiffs propose this restrictive period because they assume that, after the Complaint was filed, "Defendant was undeniably on notice of Plaintiffs' claims," and that "[i]t would be fair to assume that Plaintiff's Complaint would trigger some changes or improvements to Defendant's meal break policies . . . thereby eliminating damages at some point." (Pl.'s Reply Br. 5.) Despite this, Plaintiffs do not refute the case law cited above.

13

Defendant's use of a four-year liability period is reasonable. While the amount in controversy is determined through the consideration of the good faith allegations in the Complaint at the time it was filed, *see State Farm Mut. Auto. Ins. Co. v. Powell*, 87 F.3d 93, 97 (3d Cir. 1996), damages accruing in the future are properly counted against the jurisdictional amount if "the right to future payments . . . will be adjudged in the present suit." *Faltaous*, 2007 WL 3256833, at *9 (citing *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976)); *see also Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1997). Based on this concept, courts in this District have frequently held that an additional two-year period from the filing of the Complaint is appropriate in calculating the amount in controversy. *See, e.g.*, *Faltaous*, 2007 WL 3256833, at *9; *Alegre v. Atl. Ctrl. Logistics*, 2015 WL 4607196, at *3-4 (D.N.J. July 25, 2015) (Chesler J., citing *Faltaous*, *supra*); *Mazzucco v. Kraft Foods Global, Inc.*, 2011 WL 6935320, at *3 (D.N.J. Nov. 23, 2011).

Plaintiff's suggestion of a 2½ year period is contrary to the allegations of the Complaint which seek damages "to the present," and is based entirely on the speculation that Defendant has changed its pay practices in response to the filing of the Complaint, and if it did, did so in six months. That is an assumption stacked on an assumption. The Court will utilize a four-year liability period in assessing the amount in dispute.

**E.     Attorney's Fees**

Both parties agree that potential attorney's fees should be included in the amount in controversy analysis. *See, e.g.*, *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997). And both parties agree that in the context of a claim under the NJWHL, courts may include a thirty percent attorney's fee award. *See, e.g.*, *Mazzucco v. Kraft Foods Global, Inc.*, 2011 WL 6935320, at *3 (D.N.J. Nov. 23, 2011); *Alegre,* 2015 WL 4607196, at *5-6. Therefore, the Court will include a 30% fee award to the calculation of the amount in controversy performed below.

**F.     Defendant has Met its Burden**

As described above, the parties effectively agree on the Class Members to be included in the jurisdictional calculation. The Court also finds that Defendant has shown, by a preponderance of the evidence, that (1) using a 2.5 per-week, per-class member overtime multiplier is reasonable; (2) that $13.00 per hour is an appropriate rate of pay, and therefore, that $19.50 is an appropriate overtime rate; and (3) that a liability period of four years is reasonable. Accordingly, the amount in controversy is:

- **October 2014-October 2015**: 481 class members x 2.5 hours of overtime per class member at $13.00 per hour ($19.50 for overtime hour) x 52 weeks = $48.75 per class member x 481 class members x 52 weeks equals $1,219,335.

- **October 2015-October 2016**: 444 class members x 2.5 hours of overtime per class member at $13.00 per hour ($19.50 for overtime

- hour) x 52 weeks = $48.75 per class member x 444 class members x 52 weeks equals $1,125,540.

- **October 2016-October 2018**: 538 class members x 2.5 hours of overtime per class member at $13.00 per hour ($19.50 for overtime hour) x 52 weeks = $48.75 per class member x 538 class members x 104 weeks equals $2,727,660.

Based on the above, the total amount of potential damages that Defendant has established is **$5,072,535**.[3] Adding 30% for attorney's fees, which the parties agree on, puts an additional **$1,521,760** in dispute. Therefore, Defendant has established that the total amount in controversy is **$6,594,295**.

## CONCLUSION

Defendant has easily shown that the requisite amount in controversy—$5 million—is in dispute in this case. For that reason, it is respectfully recommended that Plaintiff's motion to remand [ECF No. 7] be **DENIED**.

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**Dated: July 28, 2017**

---

3 $1,219,335 + $1,125,540 + $2,727,660 = $5,072,535.