NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TANAIJAH A. ROUNDTREE, NICOLAS MOLINA, and D'ANDRE KING, individually and on behalf of all other persons similarly situated who were employed by PRIMEFLIGHT AVIATION SERVICES, and/or any other entities affiliated with, controlling, or controlled by PRIMEFLIGHT AVIATION SERVICES,<br><br>       Plaintiffs,<br><br>v.<br><br>PRIMEFLIGHT AVIATION SERVICES, INC. and/or any other entities affiliated with, controlling, or controlled by PRIMEFLIGHT AVIATION SERVICES,<br><br>       Defendants. | Civil Action No. 16-9609-CCC-MF<br><br>OPINION |

**CECCHI, District Judge.**

This matter comes before the Court on the motion of Defendant PrimeFlight Aviation Services, Inc. ("Defendant") to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and dismiss the Complaint of Plaintiffs Tanaijah A. Roundtree, Nicolas Molina, and D'Andre King ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 5. Plaintiffs oppose Defendant's motion. ECF No. 11. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court **GRANTS** Defendant's motion to compel arbitration and dismiss the Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Complaint alleges the following facts. Plaintiff Tanaijah A. Roundtree has worked for Defendant as a cabin cleaner and cabin cleaning lead at Newark Airport at all times between

approximately January of 2016 and the present. ECF No. 1-1 at 4-8 ("Compl."), ¶ 3. Plaintiff Nicolas Molina worked for Defendant as a cabin cleaner at Newark Airport at all times between approximately 2005 and the present. *Id.* ¶ 4. Plaintiff D'Andre King worked for Defendant as a lift truck driver at Newark Airport at all times between approximately March of 2015 and approximately September of 2016. *Id.* ¶ 5.

On or about October 31, 2016, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Essex County "on behalf of the Plaintiffs and a putative class consisting of each and every other person who performed work in trades, including but not limited to cabin cleaners, cabin cleaning leads, lift truck drivers, drivers' helpers, and other related trades for Defendants at Newark Airport." *Id.* ¶ 8. On December 30, 2016, Defendant removed the action to this Court.[1] ECF No. 1. On January 20, 2017, Defendant filed the instant motion to compel arbitration and dismiss the Complaint. ECF No. 5.

According to Plaintiffs, at all times between October of 2014 and the present, Defendants "engaged in a pattern and practice of automatically deducting one-half hour each day from each Plaintiff and member of the putative class' pay," where the one-half hour was "ostensibly related to meal breaks." Compl. ¶¶ 15-16. Plaintiffs also allege that, at all times between October of 2014 and the present, Plaintiffs and others in the putative class "regularly and routinely failed to receive a lunch break, and performed work during 'break' time for which they were not compensated." *Id.* ¶ 17. Plaintiffs further allege that Defendants "engaged in a pattern and practice of automatically 'clocking out' Plaintiffs and other members of the putative class at a point at or near their scheduled shift ending time," and that Plaintiffs and others in the putative class "regularly

---

[1] On January 30, 2017, Plaintiffs filed a motion to remand the case to state court. ECF No. 7. Defendant opposed the motion. ECF No. 10. On August 22, 2017, this Court adopted Judge Falk's Report and Recommendation that Plaintiffs' motion to remand be denied. ECF No. 17.

2

and routinely performed work past the time of these automatic 'clock-outs,' for which they were not compensated." *Id.* ¶¶ 18-19. The Complaint asserts claims for violations of the New Jersey Statutes N.J.S.A. §§ 34:11-56a4, *et seq.* (minimum wage compensation) and N.J.S.A. §§ 34:11-56a4, *et seq.* (overtime compensation). *Id.* ¶¶ 20-25. Plaintiffs demand judgment for damages, attorney's fees, and costs of suit. *Id.* at 5.

In addition, the parties have submitted briefs, declarations, and exhibits, reflecting the following factual background. Since November 2011, Defendant has had in place an Arbitration Agreement (also referred to as a Dispute Resolution Agreement) that is part of its employment application and onboarding process. ECF No. 5-3 ("Mayer Decl.") ¶ 4; ECF No. 5-1 ("Def. Br.") at 2. The Arbitration Agreement was presented to all candidates on all employment applications after November 2011. Mayer Decl. ¶ 4. On July 31, 2013, Defendant began using an online application for candidates for employment for certain work assignments in Newark, in which candidates indicate their acceptance of the Arbitration Agreement with an online acknowledgement and electronic signature. *Id.* The language and terms of the Arbitration Agreement are the same for both online and hard copy employment applications. *Id.* The Arbitration Agreement, which is displayed on a single page in its own separate section of the employment application, explains the arbitration process and procedures, and references the American Arbitration Association's website and rules for arbitration. ECF No. 15 at 4.

The Arbitration Agreement includes the following provisions:

> Both you and the Company agree to resolve any and all claims, disputes or controversies arising out of or relating to your application for employment, your employment with the Company, and/or the termination of your employment exclusively by arbitration . . . .

\*\*\*

3

> Some, but not all, of the types of claims covered are: unpaid wages, overtime, or other compensation; . . . and claims arising under any statutes or regulations applicable to employees or applicable to the employment relationship . . . .
>
> \*\*\*
>
> You and the Company agree this Agreement is enforceable pursuant to and interpreted in accordance with the provisions of the Federal Arbitration Act.
>
> \*\*\*
>
> **SPECIAL NOTE:** This Agreement and the Rules referenced above are important documents that affect your legal rights. You should familiarize yourself with and understand them, and, accepting below, you acknowledge that you have had the opportunity to do so. You may wish to seek legal advice or to consult with private legal counsel before signing this Agreement.

Mayer Decl. ¶ 6; *see also id.* ¶¶ 8, 9. The Arbitration Agreement also instructs the applicant as follows:

> By acknowledging and by accepting employment with the Company if it is offered, you agree to be bound to this Dispute Resolution Agreement, as does the Company. You understand that, as more fully set forth above, **you must arbitrate any and all employment-related claims against the Company** and that **you may not file a lawsuit in court in regard to any claims or disputes covered by this Agreement**.

*Id.* ¶ 6 (emphasis added); *see also id.* ¶¶ 8, 9.

Each Plaintiff executed the Arbitration Agreement as part of his or her employment application process. *Id.* ¶¶ 6-9; *Id.*, Exs. 1-4.

## II. LEGAL STANDARD

### A. The Presumption of Arbitrability

There is a strong federal policy in favor of arbitration rooted in the Federal Arbitration Act ("FAA"). *See, e.g., Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177-78 (3d Cir. 2010). Indeed,

the "[FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citations omitted). In considering the validity of an arbitration agreement, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). As such, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

### B. Motion to Compel Arbitration

Even in light of the strong federal presumption of arbitrability, arbitration is "strictly a matter of contract," and therefore state law is applied. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.* at 444. Thus, in deciding whether a party may be compelled to arbitrate under the FAA, a court must first consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citations omitted).

As to the first consideration, a district court "must initially decide whether the determination is made under Federal Rule of Civil Procedure 12(b)(6) or 56." *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard is appropriate where "it is apparent, based on the face of a complaint, and documents relied upon in

the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation and internal quotation marks omitted).

The Rule 56 standard is appropriate where: (1) "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at 774. Summary judgment under Rule 56 is appropriate if the record demonstrates that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

## III. DISCUSSION

### A. Standard of Review

As a threshold matter, the Court must determine which standard of review governs Defendant's motion. In this case, the existence of an agreement to arbitrate is not apparent from the face of Plaintiffs' Complaint, which does not mention the Arbitration Agreement or attach the Arbitration Agreement as an exhibit. Instead, Defendant's motion to compel arbitration relies exclusively on matters outside the pleadings. Accordingly, the Rule 56 standard governs. As Plaintiffs do not request discovery or contest the Arbitration Agreement's existence, the Court will consider Defendant's motion on the existing record. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54, n.9 (3d Cir. 1980) (holding the existence of an agreement to arbitrate

may be decided by the court as a matter of law "when there is no genuine issue of fact concerning the formation of the agreement"); *Alexander v. Raymours Furniture Co.*, No. 13-5387, 2014 WL 3952944, at *3 (E.D. Pa. Aug. 13, 2014) (considering a motion to compel arbitration under the summary judgment standard on the existing record where the plaintiff did not contest the existence of the defendant's arbitration policy or request discovery).

### B. Validity and Enforceability of the Arbitration Agreement

An arbitration agreement is subject to state-law contract principles. *JPMorgan Chase & Co. v. Custer*, No. 15-6288, 2016 WL 927339, at *4 (D.N.J. Mar. 10, 2016). "An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Byrne v. K12 Servs. Inc.*, No. 17-4311, 2017 WL 3397033, at *2 (D.N.J. Aug. 8, 2017) (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014)). An arbitration agreement is valid and enforceable under New Jersey law where it "clearly" and "unambiguously" puts the parties on notice of their rights and their "intent to surrender those rights." *Id.* (quoting *Noren v. Heartland Payment Sys., Inc.*, 448 N.J. Super. 486, 494 (App. Div. 2017)); *see also Nascimento v. Anheuser-Busch Cos., LLC*, No. 15-2017, 2016 WL 4472955, at *4 (D.N.J. Aug. 24, 2016) ("[A]n [arbitration] agreement, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court *or* have a jury resolve the dispute.") (quoting *Atalese*, 219 N.J. at 447) (emphasis added). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." *Atalese*, 219 N.J. at 444; *see also Noren*, 448 N.J. Super. at 495 ("No magical language is required to accomplish a waiver of rights, and the provision need not identify the specific constitutional or statutory right subject to the waiver") (internal quotation marks and citations omitted). "Whatever words compose an arbitration agreement, they must be clear and

unambiguous that a [party] is choosing to arbitrate disputes rather than have them resolved in a court of law. In this way, the agreement will assure reasonable notice to the [party]." *Id.* at 447. "The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Id.* at 444 (citation omitted).

Plaintiffs do not appear to dispute that Defendant presented the Arbitration Agreement to Plaintiffs, that Plaintiffs accepted the terms of the Arbitration Agreement, that the FAA applies to this dispute, or that the Arbitration Agreement is supported by valid consideration. Rather, Plaintiffs' sole argument in opposition to Defendant's motion is that the Arbitration Agreement is unenforceable because it "simply do[es] not contain the sufficiently clear 'knowing waiver of a jury right'" as required by New Jersey law. ECF No. 11 ("Opp.") at 6. Specifically, Plaintiffs contend that the Arbitration Agreement does not "reference *whatsoever* . . . the fact that, by arbitrating claims, the parties will be giving up their rights to have their claims heard before a jury." *Id.* (emphasis in original); *see also id.* at 1 (contending that "the contract must explicitly state that the party is waving his or her right to have a jury determine the dispute at issue").

This Court finds that the Arbitration Agreement "clearly and unambiguous[ly]" informed Plaintiffs that they were "waiving their time-honored right to sue." *Atalese*, 219 N.J. at 444. In submitting their employment applications, Plaintiffs were required to acknowledge their understanding that they "must arbitrate any and all employment-related claims against" Defendant and that they "*may not file a lawsuit in court* in regard to any claims or disputes covered by" the Arbitration Agreement. Mayer Decl. ¶ 6 (emphasis added). "Even a person of common knowledge, but without higher formal education, might very well understand that if one waives access to a court, one has waived access to a jury." *Emergency Physicians of St. Clare's, LLC v. Proassurance Corp.*, No. 09-6244, 2010 WL 3311861, at *6 (D.N.J. Aug. 19, 2010).

None of the cases cited by Plaintiffs suggest that an arbitration agreement cannot be enforced unless it states that the parties are waiving their rights to a jury trial. Indeed, courts applying New Jersey law have enforced arbitration agreements that do not contain an explicit jury trial waiver. *See, e.g., JPMorgan Chase*, 2016 WL 927339, at *5 (granting motion to compel arbitration where arbitration clause at issue stated that disputes would be resolved "without litigation" and provided "a detailed description of the arbitration process, showing the distinctions between arbitration and a judicial forum"); *Emergency Physicians*, 2010 WL 3311861, at *6 (granting motion to compel arbitration and finding that a "provision barring access to federal, state, and municipal courts in favor of arbitration," even without explicit reference to waiver of right to a jury trial, "puts a party on notice that it will lose access to the jury right"); *Griffin v. Burlington Volkswagen, Inc.*, 411 N.J. Super. 515 (App. Div. 2010) (affirming order compelling arbitration where clause at issue provided that the parties "understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes" but did not mention waiver of jury trial right).[2]

Moreover, the Arbitration Agreement indicates that it "affect[s] [Plaintiffs'] legal rights," instructs Plaintiffs to "familiarize [themselves] with and understand" its provisions, and states that Plaintiffs "may wish to seek legal advice or to consult with private legal counsel before signing." Mayer Decl. ¶ 6. Plaintiffs do not contest that the Arbitration Agreement so instructs them, or that

---

[2] Courts in other jurisdictions have similarly rejected the argument made by Plaintiffs. *See, e.g., Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 492 (6th Cir. 2001) ("As to the failure of the arbitration clause to include a jury waiver provision, 'the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'") (citation omitted); *Borgarding v. JPMorgan Chase Bank*, No. 16-2485, 2016 WL 8904413, at *4 (C.D. Cal. Oct. 31, 2016) ("[I]t is well-settled that an arbitration agreement does not need to contain an express waiver of the right to a jury trial."); *L&M Creations, Inc. v. CRC Info. Sys.*, No. 10-685, 2011 WL 1103636, at *7 (D. Nev. Mar. 23, 2011) (granting motion to compel arbitration even though arbitration clause did not "specifically state that the parties are waiving their right to a jury trial").

they were fraudulently induced or coerced into signing it. Given these facts, the Court is satisfied that the Arbitration Agreement put Plaintiffs on notice of their rights and their intention to waive those rights, and is therefore enforceable.[3]

### C. Scope of the Arbitration Agreement

The Third Circuit has instructed that "[i]n determining whether the particular dispute falls within a valid arbitration agreement's scope, there is a presumption of arbitrability: an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 524 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (internal brackets and quotation marks omitted); *see also Varallo v. Elkins Park Hosp.*, 63 Fed. Appx. 601, 603 (3d Cir. 2003).

Beyond a single, unsupported sentence in Plaintiff's opposition that "[c]laims for unpaid wages are not within the Agreement itself," (Opp. at 7), Plaintiffs do not contest that the Arbitration Agreement covers their claims. Based on a review of the Complaint and their Opposition, Plaintiffs seek to recover allegedly unpaid minimum wage and overtime compensation under New Jersey law. Compl. ¶¶ 20-25; Opp. at 2. The Arbitration Agreement explicitly provides that claims for "unpaid wages, overtime, or other compensation" are types of claims that fall within the scope

---

[3] Plaintiffs also contend that the provision in the Arbitration Agreement stating that Plaintiffs "may not file a lawsuit," rather than "cannot" or "shall not" file a lawsuit, "actually introduces uncertainty as to whether claims can be submitted to a court at all." *Id.* at 7. Plaintiffs' argument lacks merit. The Court agrees with Defendant's reading of the provision as prohibitive rather than permissive. Def. Br. at 4 n. 6. Indeed, the Arbitration Agreement clearly states that Plaintiffs "*must* arbitrate any and all employment-related claims against" Defendant. Mayer Decl. ¶ 6 (emphasis added). In addition, the sole case upon which Plaintiffs rely in support of their argument, *Homan v. Walls*, 648 F. Supp. 947 (D. Del. 1986), is inapposite. In *Homan*, the court distinguished the terms "may" and "shall" in the context of interpreting a Delaware state statute governing police training. *Id.* at 956-57.

of the agreement. Mayer Decl. ¶ 6. This Court therefore finds that this dispute falls within the scope of the Arbitration Agreement and Plaintiffs' claims are subject to binding arbitration.

### D. Dismissal is the Appropriate Remedy

Defendant has also moved to dismiss this action, arguing that "where all of the issues raised in the civil action are subject to compulsory arbitration, the proceeding should be dismissed rather than stayed." Def. Br. at 9. In their Opposition, Plaintiffs do not argue that staying the litigation is the appropriate remedy. Because Plaintiffs have not requested a stay of this matter pending arbitration, and based on considerations of judicial economy, this Court will dismiss this matter without prejudice pending arbitration. *See Ricci v. Sears Holding Corp.*, No. 14-3136, 2015 WL 333312, at *6 (D.N.J. Jan. 23, 2015) (dismissing without prejudice where all claims were arbitrable and where plaintiff had not requested a stay); *Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 1310292, at *9 n.5 (D.N.J. Mar. 31, 2014) (same).

## IV. CONCLUSION

For the foregoing reasons, this Court finds the parties entered into an enforceable agreement to arbitrate the instant dispute. Accordingly, Defendant's motion to compel arbitration is **GRANTED** and Plaintiffs' Complaint will be **DISMISSED**. An appropriate Order follows this Opinion.

Dated: October 18, 2017

                                                      **HON. CLAIRE C. CECCHI**
                                                      **United States District Judge**